The judgment of the court was pronounced by
Rost, J.
This is a petitory action. The plaintiffs assert title to a tract of land under an order of survey granted to TJrsin Bouligny in 1796, which they allege has been confirmed and located by the government of the United States.
*511 The defendants claim under a patent in favor of General Lafayette, dated in 1810, for lot No. 3, containing one thousand superficial acres of land pursuant to an act of Congress granting the general a large tract of land to be selected and located under warrants from the secretary of war.
After issue joined, John Hagan, the vendor of the defendants, was, by an amended petition, made a party defendant. He answered, denying generally the plaintiffs’ right to recover any portion of the land, setting up the title derived from Lafayette to such portion of it as he was in possession of, and alleging that the plaintiffs had unlawfully taken possession of another part of the Lafayette warrant No. 3, which was his property, and for which he prayed judgment in reconvention.
Both parties have entered the back concessions, which they also claim in this suit as appendages to the front tracts. The question of title was alone submitted to the district court, all others being reserved. There was judgment in favor of the defendants generally, and of John Hagan in reconvention, on the question of title to the front tracts, and a judgment of non-suit as to the double concessions. The plaintiffs have appealed, and the defendants simply ask the affirmance of the judgment.
Conceding, for the sake of argument, that the claim of the plaintiffs was filed in the land office in the manner required by law before the issuing of the patent to General Lafayette; that it has been confirmed by the act of Congress of the 11th May, 1820; and that the confirmation should be made to refer back to the date of the original title, unless that title or a survey made under it by the Spanish surveyor, in compliance with the order of the governor, will enable the court to ascertain the specific boundaries of the land granted, the location of the warrant under which the patent issued to General Lafayette cannot be disturbed. We have unifovmly adhered to the rule laid down by our predecessors in the cases of Lefebvre v. Comeau, 11 L. R. 323. Slark v. Orillon, 11 L. R. 587. Lott et al. v. Prudhomme et al. 3 R. R. 293. Metoyer v. Larenaudiere, 6 R. R. 139.
In the case of Lott, the court say, referring to the other two, “ We then held that when the boundaries of a confirmed claim are vague and uncertain, and are to be fixed by the operations of the surveying department, or such confirmation is only the recognition of a pre-existing right or claim, and before the survey and location the government sells a part of the land not necessarily embraced within the tract confirmed, the title of the purchaser will prevail.” Let us test the title of the plaintiffs by that rule, and ascertain whether the land now claimed is necessarily embraced within the tract confirmed to them, supposing that such a confirmation has taken place.
There was no survey under the Spanish government, and no possession by the grantee. The boundaries are to be ascertained exclusively by the calls of the requite, and of the order of the governor upon it. Both describe the land as a tract of forty arpents front by forty deep, in the district of Pointe Coupée, en el paraje called the Lagoon of the Raccourci. It is not stated whether the land is to front upon the lagoon or upon the Mississippi river; and as one location would answer the calls as well as the other, the description is perhaps on that ground alone defective. Lafayette v. Blanc, 3d Ann. 59.
But supposing that the front was intended to be upon the river, where is it to begin, how is it to run, and where is it to end ? Whether the words of description used mean at the place called the lagoon or in the vicinity of the lagoon, the starting point of the survey is alike uncertain and the designation of it by the *512 surveyor who located the grant, purely arbitrary, so far at least as it affects the rights of the defendants.
It is said that Dominique and Ursin Bouligny had each a grant of the same extent and in the same neighborhood ; that the grant of Ursin was above and adjoining that of his brother, and that as the grant of Dominique has been confirmed and located, and no objection is made to the location, his upper line must be taken as the lower line of Ursin.
The title of Dominique is not in the record, nor is there any evidence to show that it had a definite location. The title of the plaintiffs does not purport to be bounded by it; and that boundary could not now be assumed to the prejudice of the defendants.
It is further urged, that the claim ofthe plaintiffshaving been duly filed in the land office before the 1st of July, 1808, at whatever time before the report was made, the proof was given in support of it, the land covered by the claim according to Morgan’s survey, was reserved from any disposition by the United States. The survey referred to by counsel was made at the request of Dominique Bouligny, and bears date the 8th February, 1808. It was filed in the land office in support of the joint application of Dominique and Ursin, tobe confirmed to eighty arpents front of land by forty arpents in depth, under the order of survey issued in their favor, and was intended to embrace both grants.
We do not understand the plaintiffs as claiming now under that survey. After having alleged that they possessed as owners under it, in possessory actions instituted by them against some of the defendants and others, and after having recovered judgments restoring them to possession under that survey, they repudiated it, and in 1843 caused another to be made by the surveying department which entirely changes the course and position of the lines; so that while Morgan’s survey only conflicted with the defendants’ title to the extent of eighteen or twenty superficial acres, the conflict under the last survey amounts to several hundred acres. The land department has not passed upon that conflict;- considering it an open question, it is clear to us, and the point seems to be conceded, that the survey of 1843 cannot affect the rights of the defendants. After the plaintiffs and their vendors had claimed, during thirty-five years, the lines of Morgan’s survey, and after they had recovered judgments against the defendants under that location, it would be too much to say that the agents of General Lafayette, when they located warrant No. 3 in 1808, might, with common attention and common intelligence, have ascertained and avoided the location which the plaintiffs themselves disclaimed till 1843. The manner in which the surveys have been changed by the sui'veying department, sufficiently shows that they were from the beginning arbitrary; and we consider it too clear for argument, that the land included in the last survey was not necessarily embraced within the tract confirmed to Ursin Bougliny.
As already stated, the extent of the conflict between Morgan’s survey and the defendants location is only from eighteen to twenty superficial acres; but even to that the plaintiffs have no claim. Under an act of Congress passed on the 28th February, 1806, when the board of commissioners desired surveys to be made, they ordered them to be executed at the expense of the claimant, and parties could in all cases avail themselves of its provisions, and have their claims surveyed. But the act expressly provided, that those surveys, as well as every other survey, by whatever authority heretofore executed, (those of legal and complete titles only excepted,) should be held and considered as private surveys only.
*513 This survey was merely an attempt on the part of the Boulignys to locate their grants. It is not evidence of location against the defendants, and can have no influence on the title of either party. Mackay et al. v. Dillon, 4 Howard, 421.
This case is not unlike that of the United States v. Lawton et al., 5 Howard, 26. The grant in that case was for six miles square of land at the place called Dunn’s Lake upon the river St. Johns. There is no lake on the river St. Johns known as Dunn’s Lake; but there is a considerable lake of that name running parallel with and on an average about five miles distant from it. The Supreme Court thought themselves authorized to conclude, from the object for which the grant was asked, that it was intended to front upon the river, and to be located between the river and the lake. But as the St. Johns, by its meanders, lies opposite Dunn’s Lake for a distance of thirty miles, the land could be located on any portion of that base line which would give the front required. In that case as in this, the difficulty consisted in finding a point at which to commence the survey. From the face of the grant this could not be done, and there was nothing else to refer to. On the ground of uncertainty in the location, the Supreme Court of the United States reversed the decision of the Superior Court of Florida, which recognized the validity of the grant.
Grants made without a specific location like that of Ursin Bouligny were in the nature of floating requites which may be confirmed and located under the authority of Congress, provided the location does not interfere with others previously made in due form of law. We are satisfied that under the grant to Ursin Bouligny the land claimed was not severed from the public domain, and that it was subject to the location made for General Lafayette.
It is therefore ordered, that the judgment in this case be affirmed, with costs.